<table>
<tr><td colspan="2" style="text-align:center"><b>UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK</b></td></tr>
</table>

| | |
|---|---|
| 1587 SNEAKERS, INC.,<br><br>                        Plaintiff,<br><br>        v.<br><br>TRAVIS KELCE; PATRICK MAHOMES; 1587 PRIME KC, LLC; 1587 PRIME HOLDINGS, LLC; TOSH BERMAN; MICHAEL TANHA; and NOBLE 33 HOLDINGS, LLC<br><br>                    Defendants. | <u>**Case No.:**</u><br><br><br>          COMPLAINT<br><br>     JURY TRIAL DEMANDED |

Plaintiff 1587 SNEAKERS, INC. ("Plaintiff") brings this trademark infringement complaint against defendants TRAVIS KELCE; PATRICK MAHOMES; 1587 PRIME KC, LLC, 1587 PRIME HOLDINGS, LLC; TOSH BERMAN, MICHAEL TANHA, and NOBLE 33 HOLDINGS, LLC (collectively the "Defendants"), and alleges as follows:

<u>**SUMMARY OF ACTION**</u>

1.      Since its founding, 1587 SNEAKERS, INC. has celebrated the community and cultural legacy Asian Americans and Pacific Islanders ("AAPI") have woven into the shared American fabric since their first recorded arrival here in the year 1587. The AAPI-owned online shoe and apparel company and its stirring '1587' trademark quickly found currency, paving the way for its evolution into a national brand.

2.      More prominence was achieved when the venerable *The Boston Globe* and vaunted *Teen VOGUE* took note of the company's rise when each profiled the business in their respective far-reaching publications.  The company's mission-driven brand increased further when its co-founders showcased its products and noble story to millions of viewers on the syndicated television program, *Shark Tank*.

3.      Rooted in community, the company also regularly pairs fashion with philanthropy with its partnership with the New York not-for-profit, *Welcome to Chinatown*, for capsule collections wherein twenty percent (20%) of sales are donated to various Asian aid groups in Manhattan.

4.      Notwithstanding the above, after years of garnering notoriety and earning commercial success, the company recently became aware of the celebrity football player-backed restaurant and apparel company launched several months ago in late 2025 - dubbed "1587 PRIME."

5.      The company was understandably concerned that such a high-profile project choosing a brand name virtually identical to that of its own would overshadow it and cause irreparable damage.

6.      **It did.**

7.      And continues to do so up to this very present day, forcing the AAPI-company towards the cliff of collapse.

8.      Shortly after being made aware, through legal counsel, the company informed the above-named Defendants that intent is not a required element for infringement, while issuing cease and desist notices and multiple good faith resolution options.

9.      All of the warnings and efforts were to no avail - **the defendants persisted.**

2

10.    To protect from ongoing harm and preserve its intellectual property rights and significant investment, Plaintiff's hand was forced to file the instant action.

## THE PARTIES

11.    Plaintiff 1587 SNEAKERS, INC. is a foreign corporation organized under the laws of DELAWARE, having its principal place of business in NEW YORK, NY.

12.    Upon information and belief, Defendant TRAVIS KELCE is an individual, member of 1587 PRIME KC, LLC, and a resident of KANSAS.

13.    Upon information and belief, Defendant PATRICK MAHOMES is an individual, member of 1587 PRIME KC, LLC, and a resident of MISSOURI.

14.    Upon information and belief, Defendant 1587 PRIME KC, LLC is a foreign limited liability company organized under the laws of MISSOURI, having its principal place of business in MISSOURI, and having an impact on interstate commerce.

15.    Upon information and belief, Defendant 1587 PRIME HOLDINGS, LLC is a foreign limited liability company organized under the laws of DELAWARE, having its principal place of business in TEXAS, and is the United States Patent and Trademark Office ("USPTO") listed recent assignee owner of the disputed mark as of February 11, 2026, having an impact on interstate commerce.

16.    Upon information and belief, Defendant TOSH BERMAN is an individual, member of 1587 PRIME KC, LLC and NOBLE 33 HOLDINGS, LLC, and a resident of COLORADO.

17.    Upon information and belief, Defendant MICHAEL TANHA is an individual, member of 1587 PRIME KC, LLC and NOBLE 33 HOLDINGS, LLC, and a resident of COLORADO.

18.    Upon information and belief, NOBLE 33 HOLDINGS, LLC is a foreign limited

liability company organized under the laws of NEVADA, having its principal place of business in
TEXAS, was the prior USPTO listed assignee owner of the disputed mark prior to February 11,
2026, and is the parent company of 1587 PRIME KC, LLC, having an impact on interstate
commerce.

## JURISDICTION AND VENUE

19.     This is a civil action seeking disgorgement of profits, injunctive relief, and
corrective advertising under federal and state law based upon the Defendants' willful acts of
trademark infringement, false designation of origin, and unfair competition.

20.     This Court has original jurisdiction over this action pursuant to 15 U.S.C. § 1125, 28
U.S.C. § 1331, and 28 U.S.C. § 1338(b). This Court has jurisdiction over the pendant state law
claims pursuant to 28 U.S.C. § 1367(a) because the state law claims are based upon the same or
substantially the same conduct by the Defendants.

21.     This Court has personal jurisdiction over Defendants because they engaged in
substantial and regular business in New York and in the District Court of SDNY, including by
marketing, and offering for sale their goods and services in this District through their website, and
has committed acts of trademark infringement at issue in this Complaint in this District.

22.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2)
because the Plaintiff reside in this District and because a substantial part of the events giving rise
to the claims asserted in this Complaint occurred in this District and because a substantial part of
the property that is the subject of this Complaint is situated in this District.

## FACTUAL BACKGROUND

**PLAINTIFF'S BACKGROUND**

23.     Plaintiff is a shoe and apparel company with a First Use anywhere and First Use in

Commerce date of April 13, 2023[1] of the brand "1587" via its public website at www.1587sneakers.com.

24.    Plaintiff's marketing materials, product designs, and public communications consistently and prominently invoke AAPI historical narratives, imagery, and cultural references as the defining character of the brand.

25.    Plaintiff sells its 1587-branded shoes and clothes nationwide through online channels, and its products and marketing have reached consumers in every state in America.

26.    Samples of Plaintiff's protected products can be seen below:










27.     Since its inception, Plaintiff's continuous and extensive use and advertising of its 1587 brand has earned national acknowledgment, in some but not all, of the following ways:

a.   Millions of readers of national news publications (*The Boston Globe*[2] and *Teen VOGUE*[3]) and

b.   Millions of viewers of television news stations (ABC[4] & NBC[5])

c.   Many millions more when Plaintiff was prominently featured on the nationally syndicated television program, *Shark Tank*[6] when it aired on public airwaves and remains permanently on the television show's *YouTube* channel[7], which has 1.8 million daily subscribers.[8]

28.     As a result of Plaintiff's longstanding use, its national sales presence, and its substantial media exposure, consumers throughout the country have come to identify the numeral "1587" as originating from a single, distinctive source of apparel goods: the AAPI-owned Plaintiff

29.     Plaintiff has a partnership with the New York State not-for-profit, *Welcome to Chinatown*, for a capsule collection wherein twenty percent (20%) of sales are donated to aid Asian communities in Manhattan.

## DEFENDANTS' INFRINGEMENT

30.     On or about September 17, 2025, Defendants launched a restaurant and clothing apparel line under the brands "1587 PRIME" and "1587" ("Accused Marks") with a purported First Use anywhere and First Use in Commerce date of the same as embodied in its pending United States Patent and Trademark Office application US Serial Number: 98146972.

---

[2] *See* https://www.bostonglobe.com/2023/09/13/business/1587-sneakers-asian-americans/
[3] *See* https://www.teenvogue.com/story/the-best-lunar-new-year-fashion-and-beauty-drops-to-ring-in-the-year-of-the-dragon
[4] https://www.nbcnewyork.com/video/entertainment/the-scene/new-york-live/celebrating-asian-american-culture-with-1587-sneakers/4505315/
[5] *See* https://www.nbcnewyork.com/video/entertainment/the-scene/new-york-live/celebrating-asian-american-culture-with-1587-sneakers/4505315/
[6] *See* https://abc.com/news/14614656-b909-4400-af47-2db5d646b346/category/2887649
[7] See https://www.youtube.com/SharkTankGlobal
[8] *See* https://abc.com/news/14614656-b909-4400-af47-2db5d646b346/category/2887649

31.     Defendants' Accused Marks create confusion with consumers, given their verbatim incorporation and adoption of Plaintiff's '1587' trademark.

32.     Defendants' added term "PRIME" does nothing to distinguish the Accused Marks from Plaintiff in any legally meaningful way.

<u>APPAREL INFRINGEMENT</u>

33.     Since launching, Defendants have offered their in-person and online patrons various clothing apparel items, all of which wholly adopt and incorporate Plaintiff's '1587' mark as noted in the sample of offerings below.[9]



---

[9] *See* https://1587prime.com/shop

OVERALL INFRINGEMENT

34.     In addition to Defendants' confusing-causing apparel offerings, overall, upon review of their tasting menu,[10] **clear** Asian-inspired and influenced dishes and ingredients are peppered throughout, such as:

**Defendants' Menu Asian Themed Entrees**:[11]

1. HAMACHI with Ponzu Sauce
   a. *Japanese yellowtail fish with Japanese sauce using rice vinegar as the base.*

2. TOGARASHI FRIED CHICKEN
   a. *Japanese seasoning blend, most commonly known as shichimi togarashi or "seven-flavor chili pepper."*

3. A5 TAJIMA WAGYU BEEF RIBEYE
   a. *BMS 12 Kagoshima Japanese A5*

4. *More examples listed therein.*

**Defendants' Menu Asian Themed Beverages:**

1. BYE WEEK
   a. *Made with "OOLONG" Tea, which originated in the Fujian province of China during the Ming Dynasty.*

2. WILD LYCHEE
   b. *Made with the natural fruit "LYCHEE," which originated in northern Vietnam.*

3. *More examples listed therein.*

35.     Taken as a whole, Defendants mirror and invade the same thematic commercial space that Plaintiff has and is occupying without regard.

---

[10] *See* https://1587prime.com/menus
[11] *See* https://1587prime.com/menus

**DEFENDANTS' UNLAWFUL USE OF PLAINTIFF'S INTELLECTUAL PROPERTY**

36.    On information and belief, Defendants designed and marketed the Accused Marks.

37.    Defendants aggressively marketed the Accused Marks that plainly incorporate Plaintiff's trademark.

38.    Had Defendants done some simple due diligence prior to their launch and conducted a public internet search, they would have known Plaintiff's mark not only existed, but also obtained national prominence.

39.    Defendants' extensive marketing of the infringing Accused Marks has resulted in significant media coverage. Various news and media outlets have published articles about the Accused Marks.

40.    Moreover, Defendants' activities regarding the Accused Marks and in general have resulted in highly publicized litigation between Defendants and fellow shareholders alleging embezzlement to pay for lavish homes, boats, and female X-Rated pornographic actresses[12] and a separate lawsuit filed by a former executive officer employee, now an effective whistleblower, alleging wrongful termination and extortion while said employee was battling blood cancer.[13]

41.    Such negative publicity has resulted in consumers confusing Defendants' Accused Marks for those of Plaintiff's, further believing Plaintiff is involved in ongoing litigation and misdeeds, when in fact it is categorically not.

### *Defendants' Intentional Copying of Plaintiff's Trademark*

42.    A diligent search of the public internet would have revealed the existence of

---

[12] See https://nypost.com/2026/02/04/us-news/owners-of-la-restaurant-used-investor-cash-to-fly-in-onlyfans-models-suit/

[13] https://www.dailymail.co.uk/sport/nfl/article-15498579/travis-kelce-patrick-mahomes-steakhouse-partners-lawsuit-1587-prime.html

Plaintiff's common law trademark, which long predates the late-2025 launch by the Defendants.

43.     On information and belief, Defendants also use Google AdWords and other advertising methods in connection with their infringing marks to confuse consumers.

### *Defendants' Failure to Cease and Desist*

44.     Plaintiff sent a cease-and-desist letter to Defendants via counsel.

45.     Despite exchanging several letters and attempting to negotiate an amicable resolution of this matter, Defendants' counsel refused to respond to any further emails.

46.     As a result, and to protect its valuable and hard-earned intellectual property rights, Plaintiff has been left with no choice but to file this lawsuit to stop Defendants' infringement.

### INJURIES TO PLAINTIFF

47.     Without permission, authorization, or consent from Plaintiff, Defendants have infringed Plaintiff's trademark rights by making, using, promoting, advertising, selling, and/or offering to sell the Accused Marks whose name is confusingly similar to that of Plaintiff's trademark for related goods.

48.     The infringing Accused Marks produced, distributed, marketed, promoted, offered for sale, and sold by Defendants are not made by Plaintiff. Nor are Defendants' services or products associated, affiliated, or connected with Plaintiff, or licensed, authorized, sponsored, endorsed, or approved by Plaintiff in any way.

49.     The likelihood of confusion, mistake, and deception engendered by Defendants' infringement has caused irreparable harm to Plaintiff.

50.     Scores of consumers have contacted Plaintiff with the mistaken belief that it is affiliated or endorsed the Defendants' use of its senior mark.

51.     Defendants' activities are likely to and in fact already have caused harm due to their

use of a confusingly similar name to Plaintiff's trademark. By causing a likelihood of confusion, mistake, and deception, Defendants have and are inflicting irreparable harm on Plaintiff.

52.    Plaintiff has no adequate remedy at law.

## FIRST CAUSE OF ACTION

### Federal Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a))

53.    Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

54.    Defendants have knowingly used and continue to use in commerce, without Plaintiff's permission or authorization, Plaintiff's asserted trademark rights, and/or confusingly similar marks, in connection with products that Defendants design, manufacture, import, distribute, promote, advertise, offer for sale, and/or sells in the United States, namely the infringing name of the Accused Marks.

55.    Defendants' use of Plaintiff's trademark rights has caused and is likely to continue to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods are produced or distributed by Plaintiff, or are affiliated, connected, or associated with Plaintiff, or have the sponsorship, endorsement, or approval of Plaintiff. In addition, due to Defendants' ongoing suit with Van's Inc., the continued use of the name has tarnished the reputation of Plaintiff in that there is confusion as to whether Plaintiff is involved in such litigation.

56.    Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, for which Plaintiff has no adequate remedy at law.

57.    Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's marks to the great and irreparable injury to

Plaintiff.

58.     Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiff. Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## SECOND CAUSE OF ACTION

## New York Unfair Trade Practices (NY Gen. Bus. Law § 349)

59.     Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

60.     Defendants' use of the Plaintiff's trademark in the United States in connection with the Accused Marks is materially deceptive.

61.     Defendants' use of Plaintiff's trademark is in connection with the advertising, offer for sale, and sale of products and is directed at customers located in the United States generally, and in the State of New York specifically, where Defendants are based.

62.     These commercial advertisements and statements have and will continue to cause the loss of goodwill and the loss of current and prospective customers of Plaintiff.

63.     Plaintiff has been and will continue to be irreparably harmed unless Defendants' use of its trademark in the United States in connection with the infringing Accused Marks is enjoined.

## THIRD CAUSE OF ACTION

## Common Law Trademark Infringement and Unfair Competition

64.     Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

65.     Plaintiff is the owner of all rights and title to, and has valid and protectable prior

rights in, the asserted trademark rights.

66.    Plaintiff engages in the sale and distribution of footwear and apparel online, employing the asserted trademarks rights throughout the United States as well as within the State of New York and has done so since long before Defendants began its infringing use of Plaintiff's marks as alleged herein.

67.    Defendants have reproduced, copied, and imitated Plaintiff's trademark rights in connection with advertising, promoting, offering to sell, and/or selling footwear bearing infringing mark, in competition with Plaintiff and without Plaintiff's consent.

68.    Defendants' use of a confusingly similar name to Plaintiff's trademark has caused and is likely to continue to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods are produced or distributed by Plaintiff, or are affiliated, connected, or associated with Plaintiff, or have the sponsorship, endorsement, or approval of Plaintiff.

69.    Upon information and belief, Defendants' acts of common law trademark infringement and unfair competition have been willful and deliberate.

70.    Defendants' willful and deliberate acts described herein have caused injury and damage to Plaintiff, and have caused irreparable injury to Plaintiff, unless enjoined, will cause further irreparable injury, whereby Plaintiff has no adequate remedy at law. Plaintiff, therefore, is entitled to injunctive relief.

71.    Plaintiff is also entitled to its actual damages, Defendants' profits, and an award of costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against the Defendants as follows:

I.      Defendants and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Defendants, or in concert or participation with Defendants, and each of them, be enjoined from:

    i.      advertising, marketing, promoting, offering for sale, distributing, or selling the infringing Accused Marks;

    ii.     using Plaintiff's mark or any mark confusingly similar thereto on or in connection with any of Defendants' goods or services;

    iii.    using any name on or in connection with Defendants' goods or services that is a copy, reproduction, or simulation of, or confusingly similar to Plaintiff's trademark;

    iv.     using any name, of any kind on or in connection with Defendants' goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Plaintiff, or are sponsored or authorized by Plaintiff, or are in any way connected or related to Plaintiff; and

    v.      or otherwise continuing any and all acts of unfair competition as alleged in this Complaint.

II.     Defendants be ordered to cease offering for sale, marketing, promoting, and selling any other goods bearing Defendants' confusingly similar imitation marks;

III.    Plaintiff be awarded all damages caused by the acts forming the basis of this Complaint;

IV.     Based on Defendants' knowing and intentional use of a confusingly similar imitation of Plaintiff's trademark rights, the damages awarded be trebled and the

award of Defendants' profits be enhanced as provided for by 15 U.S.C. § 1117(a);

V.      Defendants are required to pay to Plaintiff the costs, expenses, and reasonable attorneys' fees incurred by Plaintiff in this action pursuant to 15 U.S.C. § 1117(a);

VI.     Based on Defendants' willful and deliberate infringement of Plaintiff's trademark, and to deter such conduct in the future, Plaintiff be awarded punitive damages;

VII.    Plaintiff be awarded restitution for Defendants' unjust enrichment;

VIII.   Plaintiff be awarded prejudgment and post-judgment interest on all monetary awards; and

IX.     Plaintiff be granted such other and further relief as the Court may deem just

Dated: Brooklyn, New York
February 17, 2026

**EZRA LAW, P.C.**

*/s/ Ezra Salami*
    Ezra Salami

EZRA LAW, P.C.
295 Front Street
Dumbo, Brooklyn, 11201
T: (347) 696-7555
F: (347) 696-7555
E: ezra@ezralaw.co
*Counsels for Plaintiff*